There is an objection, aside from the merits of the controversy, that I consider fatal to the judgment. Judgment nonobstante veredicto has no place in the course of a mandamus procedure. When the return of the defendants was amended or modified, it was optional with the relator to demur or plead to all or any of the material facts contained in it; and for this purpose time was given to him. Instead of demurring, which would have brought up the question of the legal sufficiency of the return, he pleaded to it, thereby admitting that the return upon its face was a sufficient answer to the case made by the alternative writ. Having taken issue as to its truth, he could not subsequently question its sufficiency as matter of law, no more than he could in an action for a false return, before the statute, following the statute of Anne, provided for the traverse of the truth of the return in the procedure of mandamus,
instead of driving the relator to an independent action. He traversed the truth of the return in fact, holding the affirmative of the issue; and if a verdict had been found in his favor, he was entitled to judgment (2 R.S., 587, § 57), but if against him, the opposite consequence followed. When the truth of the return is traversed, the granting of the peremptory mandamus is made dependent upon a verdict for him, as was the case in the action for a false return. The question of the legal sufficiency of the return in such an action could not arise, nor can it now, since the statute has allowed a traverse of the truth of the return in the direct proceeding for the mandamus. The writ of mandamus is a prerogative writ, and the relator must take the benefit of it on such terms as are accorded by the sovereign. It is not for him to say that he will question the legal sufficiency of the return both before and after the verdict. By traversing the truth of the return, he raises the same insuperable barrier against subsequently questioning its sufficiency, if the verdict be against him, as he would encounter in an action for a false return before the statute. In this case the verdict was against the relator, and it seems to me to have been clear error in the court below to give judgment for a peremptory mandamus in *Page 319 
his favor, when the verdict had gone against him. It was not a question, as suggested in the Supreme Court, whether that court, having refused on motion to strike out parts of the return, precluded itself from thereafter considering the force and effect of the finding, on the issues of fact; but the question was, whether the relator, having invoked the prerogative writ of mandamus, must take its benefit upon such terms as the sovereign accords it, and not otherwise.
But, passing by this question, let us, upon the facts alleged in the alternative writ and those set up in the return and found by the jury to be true, come to an examination of the relator's right to the peremptory writ. Unless I greatly err as to the force of facts, no such clear legal and equitable right was shown as to justify any judgment in his favor.
In April, 1857, an act was passed to establish a Metropolitan Police District, consisting of the counties of New York, Kings, Westchester and Richmond, and to provide for the government thereof. This statute brought into being a new system, all of whose officers were then first introduced into the administration of the authority of the State government. (People v. Draper,15 N.Y., 532.) It created new officers, under new names, and with greatly enlarged duties and territorial jurisdiction, and subject to the authority and control of a new Board of Police. The 32d section of the act provided that "the police in the cities of New York and Brooklyn, officers and patrolmen," after the first meeting of the new Board of Police, "shall hold office and do duty under the provisions of the act hereby enacted," and as members of the police force of the Metropolitan Police District "hereby constituted." (2 Laws of 1857, p. 217, § 32.) As the office of "patrolman and member of the police force of the Metropolitan Police District" was a new one, it would seem to have been necessary for a member of the police of New York or Brooklyn, by statute inducted into the office, by affirmative act to accept it, or do something to indicate a willingness to serve under, and not in hostility to, the Board of Police created under the act. But it appears, from the view taken in the McCunn case
 *Page 320 
(19 N.Y., 188), that no acceptance, or new oath of office, or manifestation of consent, on his part, was required. He was to be treated as continuing, or being, in office, at the instant of time the new law took effect; and although he should defy the authority of the board, refuse obedience to the law, and act in hostility to the new organization, this was but misconduct in office, to draw after it the consequence of removal only by conviction and sentence, on formal trial, under the seventh section of the act. This was substantially the judicial interpretation, in theMcCunn case, of the words of the statute, "shall hold office and do duty under the provisions of the act, and as members of the police force of the Metropolitan Police District." I am not disposed now to cavil at this construction, but to yield assent to the proposition that no affirmative action was necessary on the part of a member of the old police force of New York or Brooklyn to enable him to enjoy the new office. But, with the view I entertain of the present case, and those in the same category, this question is not important. These cases and that ofMcCunn, upon the facts, are widely dissimilar; and althoughMcCunn's case may have emboldened the relator, and others of the city police, to assert title to the office of patrolman in the new organization, that case is no precedent or authority to sustain their claim.
Now, what is the claim of the relator, and his seven associates, whose cases are substantially alike? More than two years after the Metropolitan Police law took effect, under the pretext that he was a member of the city police at the first meeting of the Metropolitan Police Board, and by operation of law transferred to the new force, and never having resigned or been legally dismissed, he invokes the mandate of the court to restore him to his office of patrolman and permit him to enjoy its emoluments; and this, though he has persistently refused to take or hold, and has never taken or held, office as a member of the Metropolitan Police, or under the Board established by the act; has withdrawn from such police force, and disclaimed holding any office or doing any duty as a member of the force of the Metropolitan Police District, and has, *Page 321 
since the passage of the Metropolitan Police act, for his private gain, entered into other employments, in no wise connected, but inconsistent, with his duties as a member of such force. This is the case of the relator, as shown by the record. The legislature thrusts office on to him, according to his theory, which he refuses: he has never held or exercised it, or discharged any duties pertaining to it; has disclaimed taking it, and repelled its duties; and has followed his own pursuits, having no connection with the police service; and thus, after refusing, disclaiming and abandoning the office and its duties, he claims to have been all the while an officer de jure by operation of law, against his will, and asks a mandamus, after two years of self-chosen de facto separation from the office, to be reinstated in it. It needs no argument to show that the writ of mandamus ought never to be granted to one in the position of the relator. If he could refuse or reject, withdraw from or abdicate the office, and thus vacate it, he has no claim to be reinstated. That he could do either of these things, does not admit of a doubt. The legislature could not transfer him, as a member of the city police, to the new police force, against his will; but he had the right to elect whether he would be thus transferred and hold office under the new act and subject to the authority and control of the new board. He did elect, by refusing to go on in the new position tendered to him, and under his increased obligations, and engaging in another and inconsistent employment. The legislature did not attempt to compel him to continue in office, but only gave him the liberty of continuing; and if he consented, and complied with the act, he thereby became a part of the new force. No penalty or punishment was imposed for not accepting or not continuing; and he could, on the day his functions under the former act ceased, have refused or rejected the office, or withdrawn from or resigned the position cast upon him by legislative authority. That he did do this, is found as a fact. To divest him of the office thrust upon him, a formal resignation was not necessary. Affirmative acts, on his part, of resignation or repudiation of the office, are quite as effectual to divest him of it as affirmative *Page 322 
words spoken or written. The relator's repugnance or resistance to being carried into office might be yielded to, and his place filled by, the Board of Police. The Board was not compelled to try, convict and sentence him under the seventh section of the act, and affect him with perpetual exclusion from the police force under the twelfth section.
In my judgment, the relator showed no sort of legal or equitable right to be restored to an office (conceding that it was cast on him by the law) which he elected to refuse, has never held or exercised, which he disclaimed taking, and has never discharged any duty pertaining to it; but, since the organization of the new police, has followed his own pursuits, not connected with, but inconsistent with, the duties of a police officer. There was a complete practical desertion, abandonment and repudiation of the office and its duties. If the relator could take this course, all the old police could have done the same, and, after rejecting and deserting the office for two years, invoke the writ of mandamus to restore them, on the ground that they had never formally resigned and could not be legally removed without formal trial, conviction and sentence. But the relator by his conduct clearly vacated the office, and the Board of Police could lawfully fill his place. It is not to be tolerated, for an instant, that a member of a police force, charged with the pressing responsibility of preserving the peace in two large cities and their suburbs, shall wholly desert his office and duties, and thereby create no vacancy in the office that the Board of Police may fill without first trying and convicting him of misconduct.
There seems to me, also, to be another objection, not without force, to awarding a peremptory mandamus to the relator. His title to the office rests wholly on the 32d section of the act of April, 1857. In 1860 that entire act was remodeled by the legislature, and the 32d section omitted. (Laws of 1860, chap. 259.) By the 69th section of the act of 1860 it was provided that "the persons in the respective offices of general superintendent, deputy superintendents, captains, sergeants and patrolmen of the Metropolitan Police District at the time of *Page 323 
the passage of this amended act, and who have taken and subscribed the oath of office as members of the police force of such district, are hereby continued in office during good behavior, subject to such promotion as may have been provided by previous sections thereof, and to removal from office only according to the provisions of this amended act." The alternative writ assumes that the relator is not in possession of the office, for it alleges that he has been unjustly removed, and asks that he may be "restored to the aforesaid office of patrolman." The section on which the relator's title rested being now gone, his title has gone with it. But, further, his appointment under the 32d section of the original act is abrogated by the new act, which restricts the force to the persons in office at the date of its passage who have taken and subscribed the oath of office as members of the police force of the Metropolitan District. This does not include the relator. It was entirely competent for the legislature in 1857 to say who should hold office in the Metropolitan Police; and it was equally so in 1860. No person has a vested right to an office in this country; and a repeal of the law under which one claims to hold, defeats whatever title he may have had. The relator's right, in this case, which was the creation of the act of 1857, needed its continuing and efficient force to carry it into execution.
The judgment of the Supreme Court should be reversed, and there should be judgment for the defendants, with costs.