THE PEOPLE OF THE STATE OF NEW YORK ᴇx ʀᴇʟ.
WILLIAM FLOYD ᴀɴᴅ WILLIAM FLOYD, Aᴘᴘᴇʟʟᴀɴᴛs, *v.*
ALFRED T. CONKLIN, Rᴇsᴘoɴᴅᴇɴᴛ.

*Savings institution — chap.* 368 *of* 1852 — *election of trustee of.*

The statute incorporating a savings institution required the vote of a majority of the trustees present, for the election of an officer. At a meeting of its trustees for the election of a president, twelve trustees were present. Six votes were given for the relator, four for the defendant, one for another person, and one trustee cast no vote. *Held,* that there was no choice.

The defendant having been a director of a bank of discount and deposit which had become insolvent, and though not formally dissolved, was in the hands of a receiver, appointed under a law requiring him to convert the assets of the corporation into cash, and providing for their division among its creditors and stockholders, and consequently having ceased to perform the duties of a director, *held,* that from having allowed himself to be voted for, as trustee of a savings institution, the charter of which provided, that no director or officer of any bank of circulation or discount and deposit should be eligible to act as trustee or officer of the corporation thereby created, he might be presumed to have resigned his position as a director of the bank.

Aᴘᴘᴇᴀʟ from a judgment recovered on the verdict of a jury, in an action brought to remove the defendant Alfred T. Conklin from the respective positions of president and trustee of the Mechanics and Traders' Savings Institution of the city of New York, which, it is claimed, he unlawfully held and occupied, and to establish the right of the relator William Floyd, a trustee, to the office of president of the said institution.

The Mechanics and Traders' Savings Institution was incorporated by chapter 368 of the Laws of 1852. The first section of the act provides, " that no director or officer of any bank of circulation or discount and deposit shall be eligible to act as trustee or officer of the corporation hereby created."

In January, 1870, and again in January, 1871, Alfred T. Conklin, the defendant, was elected a director of the Eighth National Bank of the city of New York, a bank of circulation and discount and deposit.

No evidence was produced that he had ever resigned from such trust, or had been discharged therefrom by operation of law, though

it was found that the Eighth National Bank had passed into the hands of a receiver on or about the 13th day of December, 1871.

Section 4 of the same act, as amended by section 2 of the act amending the same (chap. 139, Laws of 1868), provides that the trustees shall elect from their number a president and other officers.

Section 7 of the original act provides that the trustees shall have power to make by-laws, not inconsistent with the charter, providing, among other things, for the election of officers; and pursuant to this power the following were, among others, enacted as by-laws:

The election of officers specified in the charter shall take place annually, at the regular meeting in January. No person shall be elected a trustee, unless he is nominated at least one meeting before the election.

In section 2 of chapter 139 of the Laws of 1868 amending the act of 1852, it is, among other things, provided, "that the vote of a majority of said trustees present, shall be necessary for the appointment of any officer, receiving any salary therefrom."

*Henry E. Davies* and *Henry E. Davies, Jr.*, for the appellants. The majority of those *acting and voting* are to be considered the legal majority. (*First Parish of Sudbury* v. *Stearns*, 21 Pick., 158; *Oldnow* v. *Wainwright*, 1 Wm. Bl., 229; *Rex* v. *Foxcroft*, 2 Burr., 1017. The defendant had vacated the office of trustee by becoming a director of a bank of circulation, deposit and discount. (Dillon on Municipal Corporations.) The defendant was still a director of the bank.

*A. J. Vanderpoel*, for the respondent. The defendant was elected after he ceased to be a director of the bank. The statute requires a majority of the vote of all present to elect a trustee. *Oakland* v. *Carpenter*, 13 Cal., 540; *McCracken* v. *San Francisco*, 16 id., 591; *Piemental* v. *The Same*, 21 id., 351.)

DANIELS, J.:

The object of this action was to remove the defendant from the office of president of the Mechanics and Traders' Savings Institution of the city of New York, and place the relator in that office, to which it has been claimed he was lawfully elected, on the 8th day

of February, 1875. On that occasion twelve trustees, including the defendant, were present, and several ballots were taken for president of the institution. It was on the fifth of these ballotings that the relator claims to have been elected to that office. Then six votes were given for him, four for the defendant, one for another person, and one of the trustees cast no vote. For that reason it is insisted that he practically voted for the relator, and in that manner secured his election. But how he could be presumed to add his vote in that manner to those given for the relator, and not to those given for the defendant, is not so clear. If a presumption is to be entertained on this subject, it is just as reasonable that it should be indulged in the defendant's, as in the relator's favor. Cases have been cited in which it was presumed that persons not voting, acquiesced in the election of the person receiving the votes actually given, and in that manner assented to the election. But there was only one person voted for, and a good reason was supplied by that circumstance, for the indulgence of the presumption. (*Oldknow* v. *Wainwright*, 1 Wm. Black., 229 ; *Rex* v. *Foxcroft*, 2 Burr., 1017.) The majority simply protested, without voting for any one. And it was presumed that they acquiesced in allowing a minority to elect the officer. The presence of the majority, though not its vote, was all that was necessary to the success of the candidate. (See, also, *First Parish of Sudbury* v. *Stearns*, 21 Pick., 148.) It does not appear that any statutory provision, regulating the manner in which the election should be held, controlled in either of the cases referred to. They seem to have been disposed of upon the principle necessarily suggested by, and reasonably arising out of, the circumstances presented by them. In that respect they differ essentially from the present controversy ; for the election in question, was held under the provision of a statute which declared that " the vote of a majority of said trustees present shall be necessary for the appointment of any officer receiving any salary therefrom " (vol. 1, Laws of 1868, 241, § 2), and that required more than silent acquiescence, or assent, to elect the officer. The vote of a majority of the trustees present, was what the statute rendered indispensable to that result. Affirmative and positive action was contemplated by this provision, which should find its embodiment in an actual vote, as that term is ordinarily used and understood. To constitute an election under it,

the votes of a majority of the trustees present were necessary, and as the defendant was present and acting as a trustee under color of an election, those the relator failed to secure. A point quite similar to this arose in the case of *San Francisco* v. *Hazen* (5 Cal., 169), and the court disposed of it in that manner. (*McCracken* v. *San Francisco*, 16 id., 591.)

That also was the view which the defendant, and those who were present with him, took of the vote that had then been given. For it was not insisted or suggested that a selection had been made by the vote that had been taken, as neither candidate had a majority of the trustees who were present, in his favor. When the result became known, one of the tellers declared that no choice had been made. Then an adjournment was proposed, and the relator voted with the majority in favor of the postponement. At the time then designated, he was again present, and eight ballots were then taken for the same office, without success. Another adjournment was then ordered, for which the relator voted. At the time so appointed, the relator was again present, and two ballots were taken, resulting in no choice. The conduct of the relator, and of the other trustees who were present and acting with him in these proceedings, is consistent with no other supposition, than the existence of the conviction that an actual vote by the majority was necessary to select the officer, and that it had not been obtained. It was declared, when the vote became known, that no choice had been made, and all who were present practically adopted that conclusion. Even if that had been erroneous, as it was equivalent to a renunciation of all claim to the office by the relator, and upon that assumption he afterward participated in the further efforts made to fill it, he could not lawfully claim it when those efforts turned out to be unsuccessful. (*People* v. *Board of Metropolitan Police*, 26 N. Y., 316.) If the relator secured any right under the first vote mentionsd, he abandoned and surrendered it by his conduct upon that and the succeeding occasions, when the other votes were taken. In no view which can properly be adopted concerning the case, did the relator succeed in establishing a title to the office.

The defendant received a majority of the votes of the trustees who were present at the elections in the years 1872, 1873 and 1874,

for the office of president of the institution, and officiated as such in pursuance of those votes. And after the ineffectual proceedings of the early part of the year 1875, he formally resigned his office as trustee of the institution, and was re-elected by the vote of a majority of the remaining trustees present at the time. After such re-election, a vote was taken for the office of president, which resulted in a majority for the defendant, and under that election he has since held the office. The last election was held on the 14th of June, 1875, and the defendant seems to have held over until that time under the election of 1874.

By the first section of the act incorporating the institution, it was declared that "no director or officer of any bank of circulation or discount and deposit, shall be eligible to act as trustees or officers of the corporation hereby created." (Laws of 1852, chap. 580.) And it was shown that the defendant was elected as director of the Eighth National Bank in the months of January, 1870 and 1871. That he acted as such in January and March, 1870, and took the oath of office required from him in that capacity in January, 1871. This was a bank of circulation, discount and deposit, and under the provision of the charter of the institution, already given, his election and acceptance of the office of director, necessarily vacated his office as trustee. And for that reason, it is claimed by the plaintiffs that he could not lawfully be elected to the office of president of the institution. By article two of the by-laws of the institution, which seems to have been lawfully made and adopted, no person could be elected a trustee unless he was nominated at least one meeting before the election; and after the defendant became a director in the Eighth National Bank, until the election of 1875, he never was re-elected in that manner, to the office of trustee of the institution. He could not, therefore, have been a lawful trustee during that interval, and as the president was to be, by the charter, chosen from the trustees, his election to the office of president was consequently unlawful.

The case of *Curries* v. *Mutual Ins. Co.* (4 Henning & Mumford, 315), has been relied upon as an authority which supported the position, that an election to the office of president would be at the same time also an election to that of trustee; and that was substantially so held in that case. But there no such restraint or

disability as this by-law imposed, appeared to exist, and for that reason, it may have been properly held that the election to the second office had the effect of passing the successful candidate through the one preceding it. But in the face of the plain language of the by-law of this institution, that could not be done, for it required a nomination at a preceding meeting, to entitle the person to be legally considered a candidate for the office of trustee. This by-law was obligatory upon the trustees, and seems to have been a discreet and prudent provision, for the purpose of affording an opportunity to canvass and ascertain the qualifications and fitness of the candidate. Without a compliance with its requirement a trustee could not regularly be elected.

Before the last election of the defendant, he was nominated for the office of trustee at a preceding meeting. At the next regular meeting he resigned his office as trustee, and was at once re-elected, and at the next meeting, held on the 14th of June, 1875, he was elected to the office of president of the institution. This election was entirely regular, if he was not at that time a director in the Eighth National Bank, under his election as such in January, 1871.

The evidence concerning that point was chiefly contained in a stipulation made between the parties, that showed, " That on or about the 13th day of December, 1871, the Eighth National Bank of the city of New York became and was insolvent, and discontinued business, and at that date, or immediately thereafter, a receiver of the said bank was appointed and took possession thereof, and that said bank is now in the possession of such receiver."

It was not shown that the defendant had ever, in any way after that, acted as director of the bank, and he may very well have himself regarded his functions in that capacity at an end, from the time the bank went into the receiver's hands. As the corporation has not at any time been dissolved his office would formally continue, because no successor appears to have been elected in his place. (*Bank of Bethel* v. *Pahquioque Bank*, 14 Wall., 383 ; *Sanborn* v. *Lefferts*, 58 N. Y., 179.) But the eligibility of the defendant does not rest entirely upon the insolvency of the bank and the appointment of a receiver to close up its affairs. That would ordinarily establish the conclusion that no further active duties

remained to be or could be performed, by the directors; for the law rendered it the duty of the receiver, to convert all the assets of the bank into money, and then provided for their complete distribution among its creditors and stockholders. (U. S. R. S., 1018, § 3236.) It was not contemplated that any other or different course should be taken, where the bank proved unable, as this one did, to meet its ordinary liabilities. (Id., § 5237.) And for those reasons there could be little more than the name of the director's office left, while that state of things continued to exist. There was not sufficient of it to require its formal resignation, to divest the defendant of it. But, under the case of the *People* v. *The Metropolitan Board of Police* (*supra*), it could be done by any positive act inconsistent with its existence, evincing a design to renounce it.

The defendant understood that his eligibility as a trustee was denied, on account of his acceptance of the office to which he was elected in the Eighth National Bank. The same thing was probably known to all the trustees of the institution at the time of the last election, for his rights were then contested by this suit. It was for the purpose of removing the disability alleged that he resigned, and was then re-elected by a majority of the trustees present. And that could only be lawfully accomplished by renouncing his office as director in the bank. That, he must have intended, and by the trustees who elected him have been understood to have been done, when they voted for him. He could not lawfully hold the office for which he was a candidate, while he retained the other. The charter rendered him ineligible. By allowing himself to be nominated and voted for as he did, he must have been considered as having abandoned that of director. And as the business of the bank had ceased, and its affairs were in process of settlement by the receiver, there was nothing in the way preventing that from being done, or that could render the intention to do it ineffectual. "It is said that an office may be resigned in two ways, either by an express agreement between the officer and the corporation, or by such an agreement implied from his being elected to another office incompatible with it." "A resignation by implication may not only take place by an abandonment of the official duties as before mentioned, but also by being appointed

and accepting a new office, incompatible with the former one." (Angell & Ames on Corp. [4th ed.], §§ 433, 434; Dillon on Municipal Corporations, § 164.) The defendant could not hold both the office of director in the bank and trustee of the institution. That of director had become more formal than real, by the condition in which the bank had been placed. And he must, under the circumstances, have intended to, and did, resign and renounce that office, when he presented himself as a candidate, and was elected to and accepted the office of trustee, and afterward of president, of the savings institution. The object and intention of the prohibition contained in the first section of its charter, was to prevent persons from holding the office of trustee, whose interests in other banking corporations might induce them to consent to a diversion of its funds to improper and hazardous investments and enterprises, which, it is very clear was not, and could not be in the least danger of being violated by the last election of the defendant. The proceedings then taken were sufficient to vacate what remained of the office of director, and to invest the defendant with the legal title to those of trustee and president of the savings institution.

The judgment in the case seems to have been right, and it should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Ordered accordingly.