In the Matter of MANUEL FORMOSO, Appellant-Respondent, against STEPHEN P. KENNEDY, as Commissioner of Police of the City of New York, Respondent-Appellant.

First Department, March 11, 1958.

*Charles Haydon* of counsel (*Dublirer & Haydon,* attorneys), for appellant-respondent.

*Leon A. Fischel* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for respondent-appellant.

McNALLY, J. Cross appeals from the final order dated July 25, 1957, annulling the dismissal of the petitioner from the police department on April 13, 1956, effective April 4, 1956, directing the respondent to entertain petitioner's application for reinstatement and providing that the disposition is without prejudice to a dismissal of the petitioner for good cause shown after he shall have had charges served upon him and shall have been heard in his defense.

Petitioner was appointed patrolman in the police department on February 1, 1947. On April 3, 1956, charges, which will be dealt with later, were drawn against petitioner. On April 4, 1956, petitioner submitted to respondent his resignation effective the same day. Under date of April 13, 1956, the respondent ruled as follows: "having resigned without the permission of the Police Commissioner, and with disciplinary charges pending against him, he is hereby dropped from the rolls of the Police Department of the City of New York, effective as of 8:05 P.M., April 4, 1956, and all salary which may be due him is hereby forfeited, as provided by Section 434a–23.0 of the Administrative Code." On the same day, the department of personnel of the Civil Service Commission was advised of the action of the respondent.

Petitioner alleges the following: Prior to his resignation he was informed by John F. Walsh, supervising assistant chief

inspector, that he intended to transfer petitioner from the area to which he was then assigned, that the intended transfer was not induced by any charges against petitioner and was being made to appease public criticism of the police department. Petitioner thereupon informed Inspector Walsh that the transfer might result in publicity and adversely affect his right to a degree from Fordham University where petitioner then attended with the purpose of studying law and seeking admission to the Bar of the State of New York. Inspector Walsh thereupon advised petitioner to avoid such publicity and its adverse effects by submitting his resignation. Petitioner was then informed by Inspector Walsh that he was authorized to advise petitioner that his application for reinstatement within a year would be approved by the respondent. Relying on said representations, petitioner submitted his resignation. Petitioner thereafter and during February, 1957, learned that he had been dropped from the rolls of the police department for 'having resigned without permission and with disciplinary charges pending against him; he had no prior knowledge or information as to the said action of the respondent. Said records are false and untrue. Petitioner elected to withdraw the resignation and in this proceeding demands reinstatement to the position of patrolman as of April 5, 1956, with back pay, and the deletion from the records of the police department of all reference to his dismissal, or being dropped from the rolls of the police department for having resigned without the permission of the respondent and with disciplinary charges pending against him.

The opposing affidavit of Inspector Walsh alleges that on April 2, 1956, he was instructed by the respondent to investigate a complaint concerning the petitioner's official conduct; he assigned Deputy Inspector McGovern and Acting Captain Madden to the investigation. As a result of said investigation, charges and specifications were drawn on April 3, 1956, and on April 6, 1956, Inspector Walsh recommended trial thereof. The answering affidavit of Acting Captain Madden verifies that on April 2, 1956, he was assigned to investigate the petitioner and that he had him under observation on that day and observed the acts on which the specifications herein are grounded.

The specifications in respect of which Acting Captain Madden is the complainant are witnessed by Inspector McGovern and set forth 11 separate acts.

Specification 1 states that on April 2, 1956, while assigned to plain-clothes duty in the 10th Division between the hours of

8:00 A.M. and 4:00 P.M., petitioner was observed at 9:40 A. M. coming from his stated residence not within the confines of the 10th Division.

Specification 2 states that on said date petitioner was required to attend court at 10:00 A.M. and instead arrived at about 11:25 A.M.

Specification 3 states that petitioner failed and neglected on arriving and departing therefrom to report to the superior officer assigned to the court he was required to attend on said date.

Specification 4 states that at 1:20 P.M. on said date petitioner entered stated premises, engaged in conversation with a known gambler, directed the known gambler to enter petitioner's vehicle, which is specified and described by registration number, make and year of manufacture and was parked near said premises.

Specifications 5, 6, 7 and 8 set forth similar occurrences on the same day at different times.

Specifications 4 to 8, inclusive, state that the petitioner falsely denied the described occurrences.

Specification 9 alleges petitioner failed to record in a memorandum book his actions on said day in accordance with the rules of the police department.

Specification 10 states that the petitioner falsely denied the presence of any valuables in his private vehicle.

Specification 11 states there was removed from under the driver's seat of said vehicle a sum of money.

The additional answering affidavit of Inspector Walsh, sworn to May 31, 1957, alleges that petitioner's car had been searched by Acting Captain Madden who found $470 in cash under the driver's seat. Petitioner explained the presence of the cash by stating that his father had repaid a loan in the sum of $300 and the rest was savings and part of petitioner's paycheck. Inspector Walsh inquired for the telephone number of petitioner's father and thereupon petitioner offered to resign. Whereupon, Inspector Walsh stated: ''As far as resigning from the job, that is entirely up to yourself. I can't stop you from resigning and there is nothing I will do to force you to resign.''

Petitioner proceeds on the theory that his resignation was ineffective until approved by the respondent. He then argues that respondent having failed to accept the resignation, in accordance with the representations made by Inspector Walsh, it was petitioner's right, which he exercised, to withdraw his

resignation thereby preserving his membership in the police department with the same force and effect as if he had never tendered his resignation.

In *People ex rel. Hanrahan* v. *Board of Metropolitan Police* (26 N. Y. 316) the question presented was the effect of a resignation by a patrolman in the light of the then statute which provided " no member of the police force, under penalty of forfeiting the pay which may be due to him, shall withdraw or resign from the police force unless he shall have given one month's notice in writing to, * * *." There the court recognized the common-law right to resign in the absence of statutory inhibition. The court (pp. 329–330) said: " by the construction that must be given to this provision in the statute, a member of the police force has the absolute right to resign without consulting the Board of Police, or any other person, and without their consent to, or acceptance of, the resignation, subjecting himself to the penalty specified, viz.: forfeiture of the pay that may be due to him at the time. This right to resign is clearly implied by the language of the act. The Board of Police cannot retain a patrolman in office any longer than he desires to retain the office. * * * In this country, * * * the right to resign a civil office is absolute * * *. Hence it follows, in the absence of any statutory provision to the contrary, any civil office may be resigned by parol simply."

Section 434a–23.0 of the New York City Administrative Code provides: " A member of the force, under penalty of forfeiting the salary which may be due him, shall not withdraw or resign, except by permission of the commissioner." It would appear that the right to resign under the Administrative Code is no less than it was under the statute before the court in *People ex rel. Hanrahan* v. *Board of Metropolitan Police* (*supra*). The right of the commissioner to assess the penalty or forfeiture may have been enlarged under the Administrative Code; nevertheless, the right to resign has been preserved in almost identical language.

*People ex rel. Hanrahan* v. *Board of Metropolitan Police* (*supra*) did not present and resolve the conflict of the right of an official to resign and the right to dismiss the same official consequent on an adjudication of pending charges of malfeasance in office. It may have been within the competence of the respondent to nullify petitioner's resignation by adjudicating and sustaining the charges then pending against the petitioner and causing his dismissal thereon. (*Matter of Brooklyn Audit Co.* v. *Department of Taxation & Finance*, 275 N. Y. 284; *Ewald* v. *Medical Soc. of County of N. Y.*, 144 App. Div.

82; *Matter of Flood* v. *Monaghan,* 201 Misc. 560.) However, as we shall show, the respondent elected to adopt and act on the resignation.

Section 19 of the Civil Service Law establishes an official roster of the classified civil service and provides, in part: " The official roster shall show opposite or in connection with each name the date of appointment, employment, promotion or reinstatement, the compensation of the position, the date of commencement of service, and date of * * * dismissal, resignation, cancellation of appointment or death." The respondent, on April 13, 1956, informed the Civil Service Commission as follows:

" You are hereby informed that the Police Commissioner has this day directed the following proceedings:

" ' Patrolman Manuel G. Formoso, Shield No. 9315, 50th Precinct, having resigned without the permission of the Police Commissioner, and with disciplinary charges pending against him, he is hereby dropped from the rolls of the Police Department of the City of New York, effective as of 8:05 P.M., April 4, 1956, and all salary which may be due him is hereby forfeited, as provided by Section 434a-23.0 of the Administrative Code.'

" Date of birth: August 15, 1918

" Very truly yours,

" Vincent E. Finn
" Chief Clerk ".

The modes of "separation from service" specified in section 19 are precise, limited and exclusive and they are " dismissal, resignation, cancellation of appointment or death." (*People ex rel. Davie* v. *Lynch,* 164 App. Div. 517, 520.)

The respondent, it will be noted, affirmed the petitioner's resignation, and exercised his right to forfeit petitioner's salary on the stated grounds. Petitioner's resignation is not a determination which is reviewable in this proceeding. (*People ex rel. Goodwin* v. *Martin,* 57 Hun 587, opinion in 10 N. Y. S. 511.) In regard to forfeiture, petitioner makes no claim, and from all that appears, there may not have been any salary subject to the forfeiture. The pending charges, not having been tried, do not afford any basis for recording on the official roster of the classified civil service any fact other than the petitioner's resignation. We hold, therefore, in the absence of proof or claim that it is equivalent to a dismissal, that the fact of petitioner having been " dropped from the rolls " under the circumstances herein is of no legal significance in respect of his civil service status.

338

It was the petitioner's right not to resign and to compel a trial of the pending charges. If he has been deprived of that right, fraudulently or otherwise, then his remedy is to apply to the respondent for leave to withdraw his resignation. (*People ex rel. Goodwin* v. *MacLean*, 62 Hun 42, 44.) Upon such application it would be proper to inquire into the circumstances of the resignation and the merits of the charges and specifications pending at the time.

Although the petitioner did not apply for reinstatement in accordance with section XI of rule V of the Rules of the City Civil Service Commission, which does not carry with it the retroactive reinstatement with back pay here sought by petitioner, nevertheless, the respondent's answer would justify his refusal to so reinstate the petitioner. Apart from a bald denial, petitioner does not refute the detailed and verified specifications of malfeasance.

In the light of the views expressed herein, we are not required to pass upon the question of the judicial reviewability of the decision of the commissioner here under attack. (Cf. *Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104; *Matter of Delicati* v. *Schechter*, 3 A D 2d 19.)

The final order herein should be reversed, on the law, and the petition dismissed, without costs and without prejudice to an application by the petitioner, if he be so advised, addressed to the respondent for leave to rescind his resignation.

BREITEL, J. P., RABIN, VALENTE and BASTOW, JJ., concur.

Order unanimously reversed on the law, and the petition dismissed, without costs, and without prejudice to an application by petitioner, if he be so advised, addressed to the respondent for leave to rescind his resignation.

Settle order.